STATE of Minnesota, Respondent,

v.

Thomas William MICKELSON, Appellant.

No. C1-85-995.

Court of Appeals of Minnesota.

Nov. 26, 1985.

Review Denied Jan. 23, 1986.

Hubert H. Humphrey III, Atty. Gen., St. Paul, Robert Carolan, Dakota Co. Atty., Charles Diemer Asst. Dakota Co. Atty., Hastings, for respondent.

Deborah Ellis, Charles L. Hawkins of Thomson & Hawkins, St. Paul, for appellant.

Heard, considered and decided by RANDALL, P.J. and PARKER and SEDGWICK, JJ.

## OPINION

PARKER, Judge.

Appellant Thomas William Mickelson was convicted of theft by temporary control following a jury trial in Dakota County District Court. The charge arose out of a transaction at Drovers First American Bank, where Mickelson is alleged to have received and retained $13,000 instead of the $1,300 to which he was entitled. A stay of imposition of sentence was granted; Mickelson was placed on probation for three years, ordered to pay restitution in the sum of $11,700 with simple interest within 90 days, and required to complete 100 hours of community service work. We affirm.

### FACTS

On Friday, July 6, 1984, Mickelson went into Drovers First American Bank in South St. Paul at approximately 3:15 p.m. with another man, Earl Trageser, and a young girl. The bank was busy. Trageser endorsed a check to Mickelson; Mickelson in turn endorsed it and gave the check to the woman at the teller window. Mickelson asked that the proceeds of the check be applied to two mortgage payments and the balance given to him in cash. The balance after two mortgage payments were made was $1,349.68.

The teller, Robin Witte, did not have enough cash in her drawer to give Mickelson the $1,349.68, so she obtained the money from the vault teller, Natalie Scott.

Scott counted out 13 bundles of money amounting to $13,000. She testified that she gave the $13,000 to Witte along with a cash-out ticket for that amount. Witte gave the 13 bundles to Mickelson along with $49.68 from her teller drawer. Witte testified that at the time she gave Mickel-

son $13,049.68, she thought she had given him $1,349.68.

Sometime after Mickelson left the bank, Sheri Richtzigel, Witte's supervisor, reviewed the transaction. Upon review of the endorsed check, the mortgage payment slips and the cash-out slip, Richtzigel determined that the transaction did not balance. After some confusion, both Scott and Witte came to the conclusion that they had given Mickelson $13,049.68, rather than the $1,349.68 he was entitled to. Another bank employee then performed a cash audit, which revealed a cash shortage of $11,700.

On the following Monday, July 9, Bruce Ruecker, a vice president at the bank, called Mickelson and left a message on his answering machine. Mickelson returned Ruecker's call at approximately 6:30 p.m. Ruecker told Mickelson he called regarding the incident that took place in the bank lobby Friday, July 6. Ruecker paused at that point and Mickelson did not say anything for five to ten seconds. Mickelson then said he was not prepared to talk about that matter until they could talk and settle another problem he was having with the bank.

Mickelson told Ruecker that he had a long-standing problem with Len Nerka, vice president of real estate, regarding attorney's fees in the amount of $900 which the bank had assessed against him in a mortgage transaction. Ruecker asked Mickelson to contact the bank on Tuesday to set up a meeting. Mickelson did not contact the bank the following day.

On July 12 John Gutzman, a sergeant with the South St. Paul Police Department, was assigned to investigate. Gutzman left a message on Mickelson's answering machine stating that arrangements could be made to return the money without criminal charges being filed. Mickelson did not return the call. Gutzman also drove out to Mickelson's residence on several occasions. Although someone was clearly home, the door was not answered when Gutzman rang the bell.

On July 18 Gutzman attempted to deliver a letter written by an assistant Dakota County attorney to Mickelson's residence. When Gutzman rang the bell, he saw a person look down the stairway toward him, duck back around the corner, and finally walk toward the door. Mickelson identified himself but refused to open the door. Gutzman then left the letter in the door.

On July 23, 1984, Mickelson was charged in Dakota County District Court with two counts of theft. The $11,700 had not been returned to Drovers Bank at the time of the trial in January 1985.

## ISSUES

1. Did the trial court err in permitting the prosecution to amend the complaint to add a new charge after the case was set for trial?

2. Did the trial court err in denying appellant's requested jury instruction on a "set-off" theory of defense?

3. Was there sufficient evidence to support appellant's conviction of theft by temporary control?

## DISCUSSION

### I

Mickelson contends the trial court erred in permitting the prosecution to amend its complaint to add the count of theft by temporary control. *See* Minn.Stat. § 609.-52, subd. 2(5)(a) (1984).

Mickelson appeared with counsel ready for trial on December 18, 1984. At that time he was charged with two counts of theft: theft with intent to deprive permanently, Minn.Stat. § 609.52, subd. 2(1) (1984), and theft with intent to restore property to the owner only if a reward is paid, Minn.Stat. § 609.52, subd. 2(5)(c) (1984). The State moved for a continuance based on the prosecution's trial schedule conflicts. The State's motion was granted, and Mickelson's trial was rescheduled for January 7, 1985.

On December 28, 1984, ten days before trial, the prosecutor served defense counsel with a notice of motion and motion to amend the complaint to add a third count.

Over defense counsel's objection, the motion to amend was granted on the day of the trial. The court offered to grant Mickelson a continuance. It was refused and the trial began as scheduled. At the close of the State's case, Mickelson's motion to dismiss counts I and II of the complaint was granted. Mickelson was convicted under count III (theft by temporary control), the new charge added at the beginning of the trial.

■ Mickelson argues that Minn.R. Crim.P. 17.05 bars the prosecution from amending its complaint to add count III. Rule 17.05 provides:

> The court may permit an indictment or complaint to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

*Id.* The supreme court has interpreted Rule 17.05 to apply only to motions to amend *after* the commencement of trial. *State v. Alexander*, 290 N.W.2d 745, 748 (Minn.1980) (citing *State v. Doeden*, 309 Minn. 544, 245 N.W.2d 233 (1976)). Because the trial court granted the motion to amend before the trial commenced, Rule 17.05 does not apply.

■ Under Minn.R.Crim.P. 3.04, subd. 2, a new complaint may be filed during pretrial proceedings. *Alexander*, 290 N.W.2d at 748 (amendment of complaint adding new counts allowed under Rule 3.04, subd. 2, after mistrial and prior to commencement of new trial); *Doeden*, 309 Minn. 544, 245 N.W.2d 233 (amendment of complaint allowed under Rule 3.04, subd. 2, at an omnibus hearing). In *State v. Smith*, 313 N.W.2d 429 (Minn.1981), the supreme court upheld the trial court's approval of a motion to amend under Rule 3.04, subd. 2, made shortly before the jury was selected and before jeopardy attached. The *Smith* court also cited the defense counsel's rejection of a continuance as an indication that the amendment was not prejudicial. *Id.* Thus, the trial court in this case did not err in granting the prosecution's motion to amend its complaint.

## II

Mickelson argues the trial court erred when it denied his requested jury instruction on a "set-off" theory of defense. Mickelson was convicted of theft by temporary control of the property of another. Property of another "does not include property in which the actor asserts in good faith a claim as a collection fee or commission out of property or funds recovered, or by virtue of a lien, set-off, or counterclaim." Minn.Stat. § 609.52, subd. 1(8) (1984).

The transcript reflects a lengthy discussion between counsel and the trial judge concerning the proposed set-off instruction. The precise wording of Mickelson's requested instruction is not in the record. Apparently defense counsel wanted the court to give the Black's Law Dictionary definition of the common-law right of set-off.

■ The rule in Minnesota is that "a party is entitled to an instruction on his theory of the case *if there is evidence to support it.*" *State v. Ruud*, 259 N.W.2d 567, 578 (Minn.1977) (emphasis added), *cert. denied*, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978). The trial court ruled there was insufficient evidence to support Mickelson's theory that his alleged $900 dispute with the bank constituted a defense. Our review of the record supports the trial court's decision. The record is incomplete on the issue of "set-off"; it is conjectural as to the precise amount claimed and whether it has been paid by Mickelson to the bank. Even if Mickelson's alleged $900 dispute could be termed a claim of set-off, it would still be clear he had retained $10,800 of the bank's funds to which he was not entitled.

■ A court need not give a requested instruction if it determines that the substance of the request is contained in the court's charge. *Id.* The main purpose of the set-off defense was apparently to show that Mickelson did not have the requisite intent to deprive the bank of its property.

In his closing argument defense counsel was allowed to argue that the claim of set-off negated Mickelson's intent despite the court's ruling that there would be no specific set-off instruction.

In its charge the trial court emphasized the intent element of the crime and told the jury that there were six elements to be proved to convict Mickelson of theft. Three of the elements cited by the trial court go directly to the issue of intent:

\*   \*   \*   \*   \*   \*

Number two, defendant must have obtained the money and then intentionally concealed or retained it. This means, that the defendant must have had the purpose of concealing or retaining the money, and that he must have known or believed that it was the property of someone other than himself.

Number three, the defendant must have known or believed that he had no right to conceal or retain the money.

\*   \*   \*   \*   \*   \*

Five, defendant must have intended to exercise temporary control over the money, such control manifesting an indifference to the rights of the owner, or the restoration of the money to the owner.

\*   \*   \*   \*   \*   \*

Given these instructions and the fact that defense counsel argued the set-off theory in his closing, the jury had ample opportunity to consider whether Mickelson was making a good-faith claim in retaining the $11,700.

### III

Mickelson argues the evidence was insufficient as a matter of law to sustain his conviction of theft by temporary control.

In *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978), the supreme court stated:

In reviewing a claim of insufficiency of the evidence, we are limited to ascertaining whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged. *State v. Whelan*, 291 Minn. 83, 85, 189 N.W.2d 170, 172 (1971); *State v. Norgaard*, 272 Minn. 48, 52, 136 N.W.2d 628, 631 (1965).

*Id.* There is ample evidence on the record to sustain the jury's verdict, including the testimony of various bank employees; the cash audit which revealed that the amount missing was the exact difference between what Mickelson was entitled to and what he was alleged to have received, and Mickelson's evasive responses to both the bank and the police department when contacted about the transaction.

### DECISION

Appellant's conviction of theft by temporary control is affirmed.

Affirmed.